IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01483-REB-MEH

ELIZABETH WOJDACZ,

    Plaintiff,

v.

OFFICER JOHN IRELAND,
PATRICK MILLER,
PENROSE ST. FRANCIS HEALTHCARE,
GARY LEE NORMAN,
MICHAEL J. DUNCAN, and
CLIFF HUDSON,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court are Defendant Penrose-St.Francis Healthcare's Amended Motion to Dismiss and for Judgment on the Pleadings [filed November 30, 2012; docket #92] and Defendant Patrick Miller's Amended Motion to Dismiss and for Judgment on the Pleadings [filed December 4, 2013; docket #94]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1.C, the Motions are referred to this Court for recommendation. (Dockets ##93, 95.) Both matters are fully briefed, and the Court has determined that a oral argument would not materially assist its adjudication of the Motions. For the reasons described below, the Court respectfully RECOMMENDS that both Motions be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those

## BACKGROUND

**I.  Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in Plaintiff's Amended Complaint [docket #19], which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the Amended Complaint and, thus, will not consider the assertions contained in Plaintiff's response briefs as though they were facts. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

In the interest of clarity, the Court has arranged the facts topically rather than chronologically.  After a brief background regarding Plaintiff and her relationship with Defendant Norman, the Court will describe Plaintiff's medical treatment with Defendant Penrose St. Francis Healthcare ("Penrose") and Defendant Miller, the alleged incident of domestic violence between Plaintiff and Mr. Norman which precipitated the involvement of the Colorado Springs Police Department, Commander Brian Grady, and Officer John Ireland ("the City Defendants"), the divorce

---

findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

proceedings between Plaintiff and Mr. Norman, and Plaintiff's state court lawsuit.

    A.    <u>Plaintiff and Mr. Norman</u>

Plaintiff moved to Colorado from Ohio in July 2000. (Docket #19 at ¶ 13.) On or about March 1, 2002, Plaintiff registered a trade name for her construction company, which she incorporated on March 15, 2003. (*Id*. at ¶¶ 14-15.) Two years later, in March 2005, Plaintiff met Defendant Gary Norman. (*Id*. at ¶ 16.) Plaintiff and Mr. Norman entered into a common law marriage the following May. (*Id*. at ¶ 17.) Unbeknownst to Plaintiff, Mr. Norman was married to another woman at the time. (*Id*. at ¶ 17.) Additionally, Mr. Norman had a somewhat extensive criminal history involving a series of arrests for illegal drugs, weapons, and various traffic offenses. (*Id*. at ¶¶ 2-12.)

Sometime prior to March 2007, Defendant Norman enlisted Defendant Cliff Hudson to prepare Norman's tax returns. (*Id*. at ¶ 26.) According to Plaintiff, Mr. Norman's illegal activities generated a portion of the funds in Mr. Norman's sole account at the time of the 2007 tax preparation. (*Id*.) On or about March 2007, Mr. Norman, with the assistance of Mr. Hudson, asked Plaintiff to sign various tax documents that Plaintiff believes misrepresented her income for the 2006 tax year. (*Id*. at ¶ 18-21.) As a result, Mr. Norman received an excessive tax refund on his 2006 income tax return. (*Id*. at ¶ 22.) Plaintiff alleges that Mr. Norman committed similar tax fraud in 2007, 2008, and 2009, with the help of Mr. Hudson. (*Id*. at ¶¶ 27-40.)

By July 2010, Plaintiff alleges that Defendant Norman had amassed more than $100,000.00 from his tax activities with Mr. Hudson. (*Id*. at ¶ 48.) Mr. Norman used a portion of this money to purchase property in Pueblo, Colorado ("the Property") in July 2010. (*Id*. at ¶ 49.) As part of the transaction, Mr. Norman paid $2,175.00 to Patrick Muldoon for the preparation of documents

associated with the sale. (*Id.* at ¶ 51.) Shortly after the purchase, Mr. Norman paid Chad Pulsifier of Rocky Mountain Pole Barn, Inc. over $10,000.00 to erect a pole barn on the Property. (*Id.* at ¶¶ 59, 60.) Mr. Norman then incorporated Plaintiff's name on the deed of the Property, which Plaintiff and Mr. Norman held as "Joint Tennants (sic) with Rights of Survivorship" and as husband and wife. (*Id.* at ¶ 61.)

In December 2010, Mr. Pulsifier approached Plaintiff about performing some additional driveway work on the Property. (*Id.* at ¶ 62.) Mr. Pulsifier represented that he and Mr. Norman had agreed to the work in advance and offered to extend them a line of credit. (*Id.*) Plaintiff refused, and Mr. Pulsifier did not perform the extra work. (*Id.*)

B.    Plaintiff's Medical Treatment

Beginning on January 19, 2011, Plaintiff began receiving medical treatment for a heart condition from Defendant Patrick Miller, MD. (*Id.* at ¶ 70.) Plaintiff alleges that Defendant Norman scheduled her initial appointment and advised Dr. Miller to wait until Plaintiff could obtain health insurance before performing a follow-up examination. (*Id.* at ¶¶ 70- 71.) Several days later, Mr. Norman attempted to force Plaintiff to sign up for indigent care by attacking her in the couple's bedroom and threatening to abandon her. (*Id.* at ¶ 72.) Plaintiff claims this incident caused her to suffer a mild heart attack. (*Id.* at ¶ 73.)

Plaintiff returned to Dr. Miller for additional medical treatment on March 2, 2011, at which time Dr. Miller prescribed blood pressure medication and performed a PHQ-9 test. (*Id.* at ¶ 75.) On March 8, 2011, in response to Plaintiff's complaints that the medication was not working, Dr. Miller advised Plaintiff to double her dosage. (*Id.* at ¶ 76.) Several weeks later, on March 31, 2011, Plaintiff went to the emergency room because of a reaction she had to the blood pressure medication.

(*Id*. at ¶ 77.) Dr. Miller met with Plaintiff the next day and prescribed her a new medication. (*Id*. at ¶ 78.) Plaintiff made two more trips to the emergency room regarding similar complications on April 3, 2011, and May 8, 2011.[2] (*Id*. at ¶ 135-36.) Her hospital bills for the three emergency room visits total $6,779.23. (*Id*. at ¶ 137.) Over the next month and a half, Dr. Miller canceled several appointments with Plaintiff before terminating her as a patient on May 19, 2011. (*Id*. at ¶ 79.) Plaintiff alleges that Mr. Norman paid for one of Plaintiff's appointments with Dr. Miller using proceeds from his unlawful tax activities. (*Id*. at ¶ 80.)

Plaintiff returned to the emergency room again on August 24, 2011.[3] (*Id*. at ¶ 138.) During her August 2011 visit, Plaintiff alleges that an employee of Defendant Penrose attempted to force Plaintiff to sign an application for indigent care that contained false information. (*Id*. at ¶ 139.) Plaintiff made several subsequent trips to the Penrose emergency room on September 29, 2011, March 10, 2012, and May 29, 2012, for complications related to her heart condition. (*Id*. at ¶¶ 140-42.) Plaintiff alleges that during the May 29, 2012 visit, she was treated and released without receiving care for her heart condition despite being advised by the ambulance attendant of three abnormal "ECG tests" performed en route to the hospital. (*Id*. at ¶ 142.) Plaintiff estimates the cost of these visits was approximately $30,000.00. (*Id*. at ¶ 144.) Plaintiff believes her medical records contain false information, and that Penrose deprived her of proper medical care until "she agreed to sign up for Indigent Care." (*Id*. at ¶¶ 145-46.)

    C.    <u>Domestic Violence Allegations</u>

---

[2] Plaintiff alleges that hospital records of the April 3, 2011 and May 8, 2011 visits are inaccurate. (Docket #19 at ¶¶ 135, 136.)

[3] Plaintiff disputes the accuracy of hospital records from her August 24, 2011 visit. (Docket #19 at ¶ 138.)

On January 21, 2011, at approximately 3:00 a.m., Plaintiff went to the Colorado Springs Police Department ("the CSPD") to report the above-described physical altercation between herself and Defendant Norman. (*Id*. at ¶ 158.) Defendant Ireland responded to the call and met with Plaintiff in the lobby to discuss the incident. (*Id*. at ¶ 158-59.) Officer Ireland left the station shortly thereafter to speak with Mr. Norman at the Property. (*Id*. at ¶ 160.) Plaintiff waited in the lobby for approximately 30 minutes until the desk clerk instructed her to meet Officer Ireland at the Property so she could unlock the door. (*Id*. at ¶¶ 161-62.) Upon her arrival, Officer Ireland told Plaintiff she was required to let him into the house so he could investigate the incident. (*Id*. at ¶ 163.)

Once in the home, Officer Ireland discovered two of the three guns owned by Plaintiff and Defendant Norman. (*Id*. at ¶ 164.) He then suggested that Plaintiff obtain a restraining order against Mr. Norman and that she sell items of "marital property" located in the backyard. (*Id*. at ¶¶ 165-66.) Though Mr. Norman was not home at the time of Officer Ireland's investigation, Mr. Norman later told Officer Ireland that "he meant well." (*Id*. at ¶ 167.) Plaintiff was not interested in the police arresting Mr. Norman at that time. (*Id*. at ¶ 168.)

Following the January 21, 2011 incident, Plaintiff had no contact with Officer Ireland until December 29, 2011. (*Id*. at ¶ 169.) At that time, Plaintiff "explained about the racketeering acts" so that Officer Ireland could amend his initial report. (*Id*.) When Officer Ireland refuse to amend his report, Plaintiff became suspicious that the CSPD was also engaged in racketeering. (*Id*.)

In January 2012, Plaintiff met with Defendant Grady "concerning the conduct of several officers." (*Id*. at ¶ 170.) In a later meeting, Officer Grady provided Plaintiff with a medical release so that he could obtain her medical records for purposes of prosecuting Mr. Norman for the January 11, 2011 assault. (*Id*. at ¶ 172.) Plaintiff provided a limited release, but discovered in February

2012, that her medical records were not forwarded to the District Attorney's office. (*Id*. at ¶ 174.)

Plaintiff alleges that her efforts to report racketeering to the CSPD were not properly documented. (*Id*. at ¶ 176-77.) In particular, she alleges that Officer Ireland's description of events creates the impression that Plaintiff has memory problems and "is mentally flawed." (*Id*. at ¶ 178.) Plaintiff further alleges that the CSPD and Defendants Grady and Ireland knew of and failed to investigate tax fraud, racketeering, forgery, theft, money laundering, and a murder related to Plaintiff's divorce proceeding. (*Id*. at ¶ 179.)

      D.     <u>Divorce Proceedings and Relations with Mr. Norman</u>

Around the time of the alleged domestic violence incident in January 2011, Defendant Norman hired Defendant Michael Duncan to be his attorney in divorce proceedings. (*Id*. at ¶¶ 88-89.) Mr. Duncan prepared dissolution papers, but did not specify the nature of the "irretrievable" differences between Plaintiff and Mr. Norman. (*Id*. at ¶ 91.) Additionally, Mr. Duncan mailed Plaintiff between 250 and 1000 court documents. (*Id*. at ¶ 94.) Plaintiff believes Mr. Norman paid Mr. Duncan "large undisclosed amounts of money" from the same bank account Mr. Norman used to pay Defendant Miller. (*Id*. at ¶ 93.)

During the divorce proceedings, Plaintiff alleges Defendant Norman threatened to "throw her in a mental hospital" if she testified at their July 18, 2011 divorce hearing. (*Id*. at ¶ 104.) As a result of these threats, Plaintiff elected not to attend the divorce hearing. (*Id.* at ¶ 105.) Plaintiff's appeal of the divorce proceedings remains pending before the Colorado Court of Appeals. (*Id*. at ¶ 113.) Pursuant to a letter dated January 24, 2012, Plaintiff was or is currently being investigated by the Colorado Supreme Court. (*Id*. at ¶¶ 114-15.)

On August 16, 2011, while Plaintiff's divorce appeal remained pending, Defendant Duncan

filed an "Ex Parte Replevin action" with the intent of removing Plaintiff from the Property. (*Id.* at ¶ 117.) In October 2011, Mr. Pulsifier sent subcontractors to perform work on the Property without Plaintiff's consent. (*Id.* at ¶ 119.) Two months later, in December 2011, Judge McHenry ordered Plaintiff's name be removed from the deed to the Property. (*Id.* at ¶¶ 122, 126.)

A month prior to the termination of Plaintiff's property rights, Defendant Norman approached Plaintiff in a parking lot and asked her to meet him at the Property and then to follow him to a restaurant for dinner. (*Id.* at ¶ 120.) When Plaintiff attempted to follow him as planned, Mr. Norman sought a restraining order against her for stalking. (*Id.* at ¶ 121.) Mr. Norman's permanent restraining order against Plaintiff became effective on November 22, 2011. (*Id.* at ¶ 125.)

E.    Plaintiff's State Civil Action

In addition to the legal proceedings described above, Plaintiff initiated a civil action in El Paso County District Court against Defendants Norman, Duncan, and Hudson, as well as Judge McHenry and an individual identified as "Feeney" on July 18, 2011. (*Id.* at ¶ 116.) As a result of Plaintiff's claims, the Attorney General filed a motion requesting attorney's fees in the amount of $4,396.00. (*Id.* at ¶ 123.) At the time of the motion, Plaintiff had not yet been terminated from the deed to the Property, and thus, Plaintiff requested the court issue a lien against the Property for the amount of the fees. (*Id.* at ¶ 124.)

**II.    Procedural History**

Plaintiff initiated this action on June 7, 2012, and filed an Amended Complaint on August August 2, 2012. (Dockets ##1, 19.) In addition to the City Defendants, Plaintiff names Dr. Miller, Penrose, Mr. Norman, Mr. Duncan, and Mr. Hudson as Defendants. Though Plaintiff's allegations are numerous, she asserts three distinct claims for relief: (1) alleged racketeering activities under

8

the Colorado Organized Crime Control Act, Colo. Rev. Stat. 18-17-104 ("COCCA") against all Defendants jointly and severally; (2) alleged violations of her First, Fourth, and/or Fourteenth Amendment rights against the City Defendants and Defendants Norman and Duncan; and (3) alleged "malpractice, negligent acts and omissions, and deliberate acts and omissions" against Defendants Miller and Penrose. (Docket #19 at 30.) On February 25, 2013, Judge Blackburn dismissed Defendants CSPD and Officer Grady from this lawsuit and dismissed all but one claim against Officer Ireland. (Docket # 126.)

In response to Plaintiff's Amended Complaint, Defendants Penrose and Miller each filed answers on August 16, 2012. (Dockets ## 24, 25.) Within the time period provided by Fed. R. Civ. P. 12(c), Penrose and Miller also filed motions to dismiss and for judgment on the pleadings. (*See* dockets ## 81,88.) On November 29, 2011, this Court struck the motions for failure to comply with Judge Blackburn's Practice Standards. (Docket #91.) Penrose and Miller and filed the pending Amended Motions to Dismiss and for Judgment on the Pleadings on November 30, 2012, and December 4, 2012, respectively. (Dockets ##92, 94.) Because the factual basis for Plaintiff's claims against these Defendants is nearly identical, both Motions advance essentially the same two arguments: (1) Plaintiff's claims relating to alleged malpractice must be dismissed for failure to file a certificate of review, as required by Colo. Rev. Stat. § 13-20-602[4]; and (2) Plaintiff's Amended Complaint does not allege a valid COCCA claim.

Plaintiff moved to strike the pending Motions on December 26, 2012. (Dockets ##104, 105.) With respect to Defendant Penrose, Plaintiff argued that Penrose's failure to include affirmative

---

[4]Pursuant to Fed. R. Civ. P. 8(c), Defendants Miller and Penrose raised Plaintiff's failure to file a certificate of review in their answers. (*See* dockets ##24 at ¶ 15, 25 at 44-45.)

defenses its Answer amounted to an admission of liability regarding Plaintiff's COCCA claims and, thus, precluded Penrose from seeking dismissal. Plaintiff also disputed the sufficiency of Dr. Miller's Motion, albeit based on the merits. In denying both motions to strike, the Court noted that Fed. R. Civ. P. 12(h)(1)(B) provides that only those defenses listed in Rule 12(b)(2)-(5) are subject to waiver if not raised in a responsive pleading. (Docket #108, 2-3.) The Court further concluded that Plaintiff's disagreement with the Dr. Miller's approach to the litigation did not justify the relief Plaintiff sought. (*Id*. at 3.)

Despite the Court's conclusions regarding the effect, or lack thereof, of Fed. R. Civ. P. 12(h)(1)(B) on Defendants' ability to challenge the sufficiency of Plaintiff's claims, Plaintiff's responses to the pending Motions to Dismiss reiterate the same basic arguments. Additionally, Plaintiff maintains that because she does not include Colo. Rev. Stat. § 13-20-602 in her Amended Complaint, her failure to file a certificate of review does not bar her claims. On this point, it appears Plaintiff attempts to dispute the extent to which her claims against Penrose and Dr. Miller involve malpractice.

Defendant Penrose filed a reply in support of its Motion to Dismiss on January 29, 2013, and Miller did the same on January 31, 2013. (Dockets ##118, 122.)

## STANDARDS OF REVIEW

**I.     Rule 12(c)**

A motion for judgment on the pleadings must be evaluated by this Court using the same standard for motions under Rule 12(b)(6), *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011), the principal difference being a 12(c) motion is typically filed after the filing of an answer which asserted a failure to state a claim under Rule 12(b)(6).

## II.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## III.   Pleading Requirements of Fed. R. Civ. P. 8 and 9(b)

The adequacy of most pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which

11

requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, for certain claims, such as fraud or misrepresentation, a more stringent standard is mandated. Federal Civil Procedure Rule 9(b) requires that "[f]or any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Technology Corp. Securities Litigation,* 147 F. Supp. 2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus a plaintiff in such a case must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). In the District of Colorado, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010). The purposes of Rules 8 and 9(b) are "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).

### IV.     Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite

the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## DISCUSSION

As noted above, Defendants Penrose and Miller seek dismissal on two grounds: (1) Plaintiff's failure to file a certificate of review; and (2) Plaintiff's failure to state a claim on which relief can be granted. The Court will consider first whether Plaintiff's claims are barred by Colo. Rev. Stat. § 13-20-602 before assessing the sufficiency of the Amended Complaint.

### I. Certificate of Review

Pursuant to Colo. Rev. Stat. §13-20-602, in every action for damages "based upon" the alleged negligence of a licensed professional, the plaintiff's or complainant's attorney is required to file a certificate of review within sixty days after the service of the complaint. "This includes every claim that requires proof of professional negligence as a predicate to recovery, whatever the formal designation of the claim may be." *RMB Serv., Inc. v. Truhlar*, 151 P.3d 673, 676 (Colo. App. 2006) (citations and internal quotations omitted). The Court may extend the

deadline for good cause shown. *See Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 626 (Colo. 1999).

The requirements of section 13-20-602 are not jurisdictional; rather, courts have discretion to determine if a certificate of review is necessary. *Keller v. U.S. Dept. of Veteran Affairs*, No. 08-cv-00761-WYD-KLM, 2008 WL 5330644, at *4 (D. Colo. Dec. 19, 2008) (citing *Giron v. Koktavy*, 124 P.3d 821, 825 (Colo. Ct. App. 2005)). "A certificate of review is necessary only for those claims of professional negligence which require expert testimony to establish a prima facie case." *Giron*, 124 P.3d at 825.

Plaintiff agrees that she failed to file a certificate of review, but argues that such failure is irrelevant because she did not bring her claims under section 13-20-602. As an extension of this argument, Plaintiff represents that her claims against Defendants Penrose and Miller are not actually predicated on malpractice, but only framed that way to permit the medical providers to access insurance coverage for settlement purposes. (*See* docket #116 at 4.) Plaintiff contends that her actual claims against Penrose and Dr. Miller pertain to medical battery, patient abuse, and improper billing practices.

In resolving this discrepancy, the Court must look to the Amended Complaint itself. Plaintiff's attempt to recast her claims through her response briefs, if considered by the Court, would deprive Defendants of the notice afforded to them by the pleading requirements set forth in Fed. R. Civ. P. 8(a) and 9(b). Thus, although the Court must construe Plaintiff's Amended Complaint liberally, it need not (and will not) accept Plaintiff's conflicting *post hoc* characterizations of her claims.

As stated plainly in the Amended Complaint, Claim III alleges that Plaintiff is entitled to

relief against Defendants Penrose and Miller "under federal and state statutes concerning malpractice, negligent acts and omissions, and deliberate acts and omissions. . ." (Docket #19 at 30, ¶ III.) Claim I asserts that Plaintiff is entitled to relief from all Defendants, including Penrose and Dr. Miller, pursuant to COCCA. In determining whether Plaintiff's claims against Penrose and Dr. Miller require a certificate of review, the Court will consider the facts alleged in the Amended Complaint as the relate to each Defendant.

### A.  Dr. Miller

Plaintiff alleges that Dr. Miller ordered an echo test and blood work to diagnose her heart condition [*Id.* at ¶ 70], prescribed medication for her heart condition [*Id.* at ¶ 75], advised Plaintiff to increase her dosage of medication [*Id*. at ¶ 76], changed her prescription [*Id*. at ¶ 78], and canceled various appointments with Plaintiff before terminating her as a patient on May 19, 2011 [*Id*. at ¶ 78]. She also claims that Mr. Norman paid Dr. Miller for Plaintiff's medical treatment using illegally-acquired funds held in Mr. Norman's sole bank.

It is clear from Plaintiff's Amended Complaint that the factual context for Plaintiff's claims against Defendant Miller arises entirely from the medical treatment he provided. Any claim predicated on Dr. Miller's failure to meet the duty of care owed to Plaintiff requires expert testimony, and therefore, a certificate of review. *Williams v. Boyle*, 72 P.3d 392, 397 (Colo. App. 2003) (finding a certificate of review was required where plaintiff alleged the defendant breached his duty by "not giving appropriate diagnosis, treatment, and followup on plaintiff's health problems."). Thus, Plaintiff's claims for malpractice and negligence should be dismissed for failure to file certificate of review in this case.

Notably, the issue of informed consent also implicates a physician's duty of care. *Id*.

15

Because Plaintiff's Amended Complaint does not suggest that Plaintiff failed to consent to any of the treatment Dr. Miller provided, the Court construes her assertion of "medical battery" liberally as an allegation that the information Dr. Miller provided to Plaintiff was inadequate. *See Williams v. Bender*, 596 F.3d 1244, 1254 (10th Cir. 2010) (under Wyoming law, medical battery is limited to cases in which a treatment or procedure is completely unauthorized, while negligence principles govern whether consent is informed). However, in order for Plaintiff to demonstrate that Dr. Miller's disclosures fell below the standard of care, expert testimony is needed. *Boyle*, 72 P.3d at 398-99. Thus, Plaintiff's failure to file certificate of review bars her Third Claim against Dr. Miller.[5]

### B. Penrose

With respect to Defendant Penrose, Plaintiff alleges that during her visits to the Penrose emergency room, she was "subjected to patient abuse, negligent acts, failure to treat/diagnose, and/or other negligent acts due to a departure of (sic) a standard of care regardless of what those medical records claim." (Docket #19 at ¶¶ 140, 141.) Indeed, Plaintiff believes that many of her medical records contain false information. Notably, Plaintiff alleges that "in all relevant parts of [her] Amended Complaint, [] Penrose. . .attempted to aid the other defendant's (sic). . .by refusing to provide basic care and treatment to Plaintiff. . . ." (*Id*. at ¶ 146.)

Because Plaintiff expressly predicates the entirety of her claims against Defendant Penrose on Penrose's failure to provide her with basic care and treatment, a certificate of review

---

[5]Dr. Miller's Motion to Dismiss argues that Plaintiff's failure to file a certificate of review also impacts her COCCA claim. Not surprisingly, the Court finds, and Dr. Miller cites, no case in which a certificate of review was required to proceed on a COCCA claim. However, because Plaintiff's COCCA claim is entirely lacking in factual support, the Court finds it unnecessary to evaluate the propriety of dismissal on this considerably thinner ground.

is required for any proceeding against Penrose. *See RMB Serv. Inc.*, 151 P.3d at 676 (finding a certificate of review is necessary for "every claim that requires proof of professional negligence as predicate to recovery, whatever the formal designation may be."). Plaintiff's failure to file a certificate of review is fatal to her third claim, and in light of the scope of Plaintiff's allegation, likely bars her COCCA claim as well. But, as the Court noted above, the factual deficiency of Plaintiff's COCCA claim provides a clearer basis for dismissal. The Court will turn there now.

## II.     COCCA Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff asserting a COCCA claim must allege at least two acts of racketeering activity which are related to the conduct of the enterprise. *See Clementson v. Countrywide Fin. Corp.*, 464 F. App'x 706, 713-14 (10th Cir. 2012) (upholding district court's dismissal of a *pro se* plaintiff's COCCA claim under Fed. R. Civ. P. 12(b)(6) where plaintiff failed to allege two acts of racketeering activity). As defined by Colo. Rev. Stat. § 18-17-103(5), "racketeering activity" means to commit or attempt to commit, or to solicit, coerce, or intimidate another person to commit any of the offenses listed in subsections 18-17-103(5)(a)-(b) of the Act.

Plaintiff's claims against the Defendants Penrose and Miller arise from Plaintiff's medical treatment as described above. Though the list of qualifying criminal activities is extensive, the Court sees nothing in Plaintiff's Amended Complaint, beyond Plaintiff's conclusory labels, to provide support for even one predicate act of racketeering on the part of either Dr. Miller or Penrose. Plaintiff's allegations of fraud or attempted fraud in her medical records fail to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) insofar as they provide little, if any, indication of "the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *See Sikkenga,*

472 F.3d at 726-27.  Therefore, the Court recommends the District Court dismiss Plaintiff's COCCA claim against Defendants Miller and Penrose.

### III.     Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice.  *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989).  As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations.  *See Bellmon*, 935 F.2d at 1109-10.

In this case, the Court notes that Plaintiff has previously amended her pleadings in response to a motion to dismiss.  (*See* dockets ##10, 19.)  In this way, Plaintiff has already received notice of potential deficiencies and an opportunity to cure them.  *See Bellmon*, 935 F.2d at 1109-10.  Additionally, the glaring absence of information in Plaintiff's Amended Complaint regarding Defendants Miller and Penrose leads the Court to find that further amendment would be futile. Consequently, the Court recommends that the Plaintiff be denied another opportunity to amend her pleadings to assert additional claims against Penrose or Dr. Miller.

### CONCLUSION

For the reasons described above, the Court finds that Plaintiff's Third Claim for relief against Defendants Miller and Penrose should be dismissed for failure to file a certificate of review, as required by Colo. Rev. Stat. §13-20-602.  With respect to Plaintiff's First Claim against Dr. Miller and Penrose, the Court finds that Plaintiff's Amended Complaint fails to plausibly allege even one predicate act of racketeering under COCCA.  Accordingly, the Court respectfully RECOMMENDS that  Defendant Penrose-St.Francis Healthcare's Amended Motion

to Dismiss and for Judgment on the Pleadings [filed November 30, 2012; docket #92] and Defendant Patrick Miller's Amended Motion to Dismiss and for Judgment on the Pleadings [filed December 4, 2013; docket #94] be **GRANTED** and that the District Court deny Plaintiff any further opportunity to amend her pleadings.

Dated this 4th day of March, 2013, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge