IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01483-REB-MEH

ELIZABETH WOJDACZ,

    Plaintiff,

v.

OFFICER JOHN IRELAND,
GARY LEE NORMAN,
MICHAEL J. DUNCAN, and
CLIFF HUDSON,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Officer John Ireland's Motion for Summary Judgment [filed August 30, 2013; docket #207]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #208]. The motion is briefed to the extent required by court rules and the prevailing law, and the Court has determined that oral argument would not materially assist its adjudication of the motion. For the reasons that follow and based upon the entire record contained herein, the Court RECOMMENDS that Officer Ireland's motion be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

## **BACKGROUND**

**I.       Findings of Fact**

The Court finds the following facts, viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter. The facts noted here constitute only those necessary for the Court's analysis of the arguments raised in the present motion.

1. On January 21, 2012, Plaintiff Elizabeth Wojdacz went to the Police Operation Center in Colorado Springs, Colorado at about 4:00 a.m. Plaintiff advised Defendant Officer John Ireland about an altercation that occurred between herself and Defendant Gary Norman earlier that morning. At that time, Plaintiff believed Mr. Norman to be her husband, but she later learned he was married to another woman. (Wojdacz Deposition, pp. 10-14, docket #207-1; Ireland Affidavit, ¶ 5, docket #207-2.)

2. Plaintiff was afraid of Norman and was concerned about her safety. (Wojdacz Depo., pp.29-30; Ireland Aff., ¶ 6.)

3. Officers Ireland and David Bucksath went to Plaintiff's residence. This is one juncture at which the parties' stories diverge. The officers state that they accompanied Plaintiff to her residence at her request. Plaintiff states that the officers first went to the house without her while she waited at the police station for thirty minutes. Plaintiff states that she met them at her residence when the officers requested her presence. (Wojdacz Depo., pp. 19-20;

---

recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

        Ireland Aff., ¶ 6; Bucksath Affidavit, ¶ 5.)

4. Officer Ireland knocked on the door and no one responded. No lights were on in the residence and Norman's vehicle was not there. Plaintiff advised the officers that Norman had probably left to go to work. (Wojdacz Depo., pp.16-17, 20-21; Ireland Aff., ¶¶ 8, 10; Bucksath Aff., ¶¶ 7, 9.)

5. Although the conversation that occurred between Plaintiff and Officer Ireland is disputed, the parties do not dispute that Plaintiff consented to the search of her residence and never withdrew that consent. Plaintiff claims that Officer Ireland "made [her] let him in that house." Officer Ireland claims that Plaintiff asked him to enter her house to confirm that Mr. Norman had not taken any of the firearms from inside. (Wojdacz Depo., pp. 17, 24-30; Ireland Aff., ¶¶ 10-11, 17.) The parties' divergent positions on the issue of consent is discussed below. Plaintiff advised Officer Ireland that there were firearms in the house, and she explained where they were supposed to be located. (Wojdacz Depo., pp. 17, 24; Ireland Aff., ¶ 11.)

6. The officers did not find Mr. Norman in the residence, but they located the firearms described by Plaintiff. Plaintiff was advised of the search results. (Wojdacz Depo., p. 30; Ireland Aff., ¶ 20; Bucksath Aff., ¶ 15.)

**II.      Procedural Background**

Plaintiff initiated this action on June 7, 2012 and filed an Amended Complaint on August 2, 2012. (Dockets ##1, 19.) Though Plaintiff's allegations were numerous, she asserted three distinct claims for relief: (1) racketeering activities under the Colorado Organized Crime Control Act, Colo. Rev. Stat. 18-17-104 ("COCCA"); (2) violations of her First, Fourth, and/or Fourteenth

Amendment rights; and (3) "malpractice, negligent acts and omissions, and deliberate acts and omissions." (Docket #19, p. 30.) On February 25, 2013, in adjudicating a motion to dismiss filed by Colorado Springs and then-Defendant Officers Brian Grady and Ireland, Judge Blackburn adopted my Recommendation and dismissed all but one claim against Officer Ireland. (Docket # 126.) Plaintiff's Fourth Amendment claim against Officer Ireland, based on his search of her residence, is the only remaining claim against him.

## LEGAL STANDARDS

### I.   Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts

showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

**II.     Treatment of a Pro Se Litigant's Pleadings**

While a federal court must construe a *pro se* litigant's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers" (*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted)), it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The Supreme Court has consistently held that warrantless searches and seizures in a home violate the Fourth Amendment absent consent or exigent circumstances. *Steagald v. United States*, 451 U.S. 204, 211-12 (1981). Officer Ireland contends that Plaintiff voluntarily consented to the search of her residence. "'Voluntary consent' consistent of two parts: (1) the law enforcement officers must receive either express or implied consent, and (2) that consent must be freely and voluntarily given." *U.S. v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012). The parties do not dispute that Plaintiff gave Officer Ireland permission to search her home; the issue is whether that permission was freely and voluntarily given.

"[T]he question whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The officer's conduct

is to be viewed objectively; thus, the question is whether, given the totality of the circumstances, "a reasonable officer would have believed he or she had consent to enter the residence." *Berglund v. Pottawatomie County Bd. of Cnty. Comm'rs*, 350 Fed.Appx 265, 269 (10th Cir. 2009). In making that determination, courts consider whether certain circumstances were present:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects ...; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other member of the public.

*U.S. v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004) (ellipsis in original) (internal quotation marks omitted).

Here, Plaintiff went to the police department of her own free will because she feared Mr. Norman. (Wojdacz Depo., pp. 10-14, 29-30 docket #207-1; Ireland Aff., ¶¶ 5-6, docket #207-2.) The officers went to her residence, but no one answered the door. Plaintiff advised the officers that there were firearms in the home, and that, while Mr. Norman had likely departed, she feared for her safety because he may have taken the firearms. (Wojdacz Depo., pp.16-17, 20-21; Ireland Aff., ¶¶ 8, 10; Bucksath Aff., ¶¶ 7, 9.) Officer Ireland used a conversational tone when he spoke with Plaintiff. (Ireland Aff., ¶ 12.) He did not tap or otherwise suggest he would use any of his equipment or weapons against Plaintiff. Ireland Aff., ¶¶ 13-15. Officer Bucksath was at the other side of the home when the conversation about the firearms occurred. (Bucksath Aff., ¶ 8.)

Plaintiff does not specifically contest any of the foregoing facts in her response. Instead, she states in her affidavit that the officers lied in their affidavits. (Plaintiff's Response, p. 8, docket #219.) Such "unsupported conclusory allegations do not create a genuine issue of fact." *L & M*

*Enters., Inc. V. BEI Sensors & Sys. Co.*, 231 F.3d 1283, 1287 (10th Cir. 2000).  Nonetheless, Plaintiff's deposition, attached to Officer Ireland's motion, contains statements that raise a material factual question about the voluntariness of her consent.  The following exchanges occurred during her deposition:

> Q: [The officers] go into your house?
>
> A: Uh-huh.  Yeah, I let them in.
>
> Q: Okay.  And you didn't have a problem with them entering your house?
>
> A: I thought it was legitimate for them to do that.  And then I found out later they had no right to do that.
>
> [. . .]
>
> Q: What were [Officer Ireland's] words that preceded you allowing him in?
>
> A: He said I had to let him in the house.
>
> Q: Those were his exact words?
>
> A: I do not remember his exact words, but his words to me were that I had to let him in the house.
>
> [. . .]
>
> Q: So it's fair to say at this point in time, you do not recall what Officer Ireland told you?
>
> A: He told me to let him in the house.
>
> [. . .]
>
> Q: Is it possible that you misconstrued what Officer Ireland told you?
>
> A: Absolutely not. He made me let him in that house.

Q: How did he make you –

A: Because he's a cop and I'm a victim. I went to the police for help. I'm doing what the cops are telling me. I thought I had to. I didn't know that I had the right to say, "No, I don't want you in my house."

[. . .]

Q: At that point in time, you were scared of Gary Norman?

A: Yes.

Q: And that's why you let officers in the house?

A: Yes.

[. . .]

Q: [I]s there anything that would help you refresh your recollection that would change those responses? [. . .] There were responses that you've made that you said you did not remember as far as specifics.

A: Oh, specifics, his words exactly, Ireland's exact words, I don't remember, but the tone if it, the context of it, he told me to let them in the house. I had no choice. He made me wait outside, and he didn't make me wait outside by the door. He made me wait outside by the garage, across the driveway, when I let him in and I had to go over there and stand and wait for them to come out.

[. . .]

Q: Okay. And it's your recollection based on his tone what he was requiring you to do?

A: I did everything I was told to by the police because I thought I was supposed to do everything. I had no idea I had the right to refuse them in that house[.]

Q: And you don't remember his specific words?

A: His specific words led me to believe - - whatever they were that night, led me to believe that I had to let him in that house and that I was not allowed to go in there with them.

9

> [. . .]
>
> Q: But you don't recall their specific words?
>
> A: Their specific words at the time led me to believe that I had no choice, that I had to let them in the house. They didn't say, "You don't have to let us in." They never said I didn't have to. They said, "Open the door, because [Mr. Norman] wasn't here. We [have] to get in."
>
> Q: Those were their specific words?
>
> A: Yeah. Well, no, not specific. It was words that meant that. What his exact words were, I don't know. It was a couple of years ago[.]

(Wojdacz Depo., pp. 19-54.)

Consent to search is not valid where police "convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991). Though Plaintiff was unable to recall Officer Ireland's exact words, she repeatedly stated that he conveyed a message that her consent to search the residence was required. The Court recognizes that Plaintiff's statements that she feared for her safety because Mr. Norman may have taken the firearms from inside the home, particularly in light of her decision to go to the police station because she feared him, contradict the statements she made during her deposition. However, "a judge may not make credibility determinations on summary judgment." *Hansen v. PT Bank Negara Indonesia*, 706 F.3d 1244, 1251 (10th Cir. 2013). As the Supreme Court has made clear:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment[.] The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because Plaintiff's deposition testimony "is to be believed," and some of her statements allow an inference that her consent was

involuntary, the Court has no choice but to recommend denying Officer Ireland's motion for summary judgment.

## CONCLUSION

Accordingly, the Court respectfully RECOMMENDS that Defendant Officer Ireland's Motion for Summary Judgment [filed August 30, 2013; docket #207] be **DENIED**.

Dated at Denver, Colorado, this 17th day of October, 2013.

BY THE COURT:

*/s/ Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge