**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.12-cv-01483-REB-MEH

ELIZABETH WOJDACZ,

    Plaintiffs,

v.

GARY LEE NORMAN, and
CLIFF HUDSON

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

**Blackburn, J.**

The matter before me is plaintiff's notice of **Fraud Upon the Court by Robert Blackburn, Gary Norman and Cliff Hudson** [#315],[1] filed May 13, 2014, which I construe as a motion for a new trial.[2] Exercising my discretion pursuant to D.C.COLO.LCivR 7.1(d), I rule on this motion without awaiting the benefit of a response. I deny the request for a new trial.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

---

[1] "[#315]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Because plaintiff is proceeding pro se, I have construed her pleadings more liberally and held them to a less stringent standard than formal pleadings drafted by lawyers. **See Erickson v. Pardus**, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); **Andrews v. Heaton**, 483 F.3d 1070, 1076 (10th Cir. 2007); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing **Haines v. Kerner**, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)).

## II.  STANDARD OF REVIEW

When a case has been tried to a jury, a new trial may be granted "for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States." **FED. R. CIV. P.** 59(a)(1).  A motion for new trial "is not regarded with favor and should only be granted with great caution." ***United States v. Kelley***, 929 F.2d 582, 586 (10th Cir. 1991).  The decision whether to grant a new trial is committed to the sound discretion of the trial court.  ***Id.***

## III.  ANALYSIS

Plaintiff's constitutional and RICO claims were tried to a jury on May 5-7, 2014.  After plaintiff rested, each defendant made an oral, mid-trial motion under Rule 50(a) for judgment as a matter of law.  After hearing, I granted these motions, finding that plaintiff had failed to offer proof sufficient to meet all essential elements of any of her claims.  This motion followed.  Plaintiff advances several arguments in support of her motion for new trial, premised largely on my rulings on the evidence presented – and prohibited from being presented – at trial.  None has merit.

Plaintiff first complains of my order quashing the subpoena she issued to Dr. Patrick Miller and then refusing to let her testify about Dr. Miller's alleged participation in the events underlying her claims.  With respect to the quashal, the procedural and substantive deficiencies in the subpoena served on Dr. Miller are set forth fully in my **Order Granting the Motion of Non-Party Patrick A. Miller, M.D. To Quash Subpoena** [#302], filed May 1, 2014, and need not be repeated here.  As for plaintiff's testimony regarding Dr. Miller's treatment of her following the alleged attack by

2

defendant, Gary Norman, I found that the evidence was hearsay and irrelevant to any claim before the jury for determination and thus struck it.[3]  Plaintiff's description in her motion of how this evidence allegedly pertained to her claims buttresses my conclusions in that regard.[4]  Plaintiff has presented not a shred of actual evidence to support her insinuations regarding Dr. Miller's actions related to her.  Moreover, nothing in Dr. Miller's purported testimony would have shown that either defendant was a state actor for purposes of plaintiff's section 1983 and 1085 claims, nor that either defendant was engaged in an enterprise for purposes of her RICO and COCCA claims.  These arguments thus present no basis warranting a new trial.

Plaintiff next complains of the refusal to admit certain exhibits.[5]  Exhibit 6 was an unsigned letter from 1976 purporting to be from Ann Craig, who therein represented herself to be Mr. Norman's wife.  Plaintiff never established the authenticity of this document, which in addition was rank hearsay.  The document thus was properly excluded.  Nor could plaintiff possibly show that the exclusion prejudiced her, since Mr.

---

[3] Contrary to plaintiff's suggestion, the purported nature of this testimony regarding Dr. Miller's treatment was not among the issues preserved for trial.  (*See* **Final Pretrial Order** ¶ 3(a) at 2-4 [#294], filed April 24, 2014.)  Instead, it was merely plaintiff's indication of the nature of Dr. Miller's testimony.

[4] Plaintiff's theory of how this evidence is relevant is an ever-moving target.  At trial, she suggested that the testimony was relevant to damages for her constitutional claims.  At other times, she has offered the testimony of evidence of an alleged plot by Mr. Norman to kill her.  (*See* **Final Pretrial Order** ¶ 6(a)(1)(A)(4) (describing nature of expected testimony of Dr. Miller).)  In the present motion, plaintiff claims that Mr. Norman and Dr. Miller also conspired to trick her into signing up for indigent care, which required the completion of a mental health questionnaire, which plaintiff suggests would then have been used to have her committed to a mental institution, all in order to prevent her from testifying at the final divorce hearing.

[5] Plaintiff also complains that I prevented the jury from considering Mr. Norman's videotaped deposition.  This evidence was reviewed and considered by the court and admitted for all purposes.  Nevertheless, nothing therein warranted submission of plaintiff's claims to the jury.  At best, the evidence might be considered to impeach Mr. Norman as to a few of the details of his recollection of the divorce proceedings and related events.  Importantly, however, it did not go to any of the essential elements found lacking by the court in granting the motions for judgment as a matter of law.

Norman testified that he had been married to Ms. Craig, which is all the letter could possibly be expected to demonstrate.

Exhibit 10 consists of two pages purporting to establish that plaintiff earned income in 2006. The exhibit is hearsay and was excluded on that basis. Here again, plaintiff fails to show how the exhibit overcomes the hearsay objection. Moreover, plaintiff was allowed to testify from her personal knowledge that she earned income in the 2006 tax year, thus proving up the substance of the documents. No prejudice thus could be shown from their exclusion.

Exhibit 42 purports to be a list of exhibits that Mr. Norman's attorney prepared and submitted in the parties' divorce proceeding. Plaintiff now claims that one document listed in the exhibit – referenced therein as "Colorado Indigent Care Program Info" – was an application for indigent care, which Mr. Norman allegedly tried to trick plaintiff into signing in order to facilitate her commitment to a mental health facility. Whatever the nature or relevance of this underlying document, the list which comprises Exhibit 42 itself remains irrelevant and inadmissible. There was and is no evidence that any of the documents described therein actually were admitted in the action for dissolution of marriage.[6] Plaintiff's motion does not show otherwise, and I therefore perceive no basis on which to grant a new trial based on the exclusion of this evidence.

Lastly, plaintiff complains generally that I interposed objections of my own, interrupted her examinations (both of the defendants and while testifying in her own

---

[6] The list is presented in the form of a table, with columns next to the number and name of each exhibit entitled "Offered" and "Admitted." Neither of these columns is checked for any of the exhibits listed. Moreover, the document bears no indicia of authenticity, and Mr. Norman was not able to confirm that it had been prepared by him or on his behalf.

4

behalf), and deprived her of her right to trial by jury by dismissing the claims at mid-trial.[7]  None of these matters suggest that a new trial is warranted in this case.  As I apprised the parties at the combined Final Pretrial Conference and Trial Preparation conference, given the unique nature of this case – the first in the court's 12 years on the federal bench in which all parties were pro se – I intended to take my role as arbiter and gatekeeper of the evidence to be presented at trial seriously.  I made this pronouncement to ensure that all parties knew that I would take an active role in the marshaling and presentation of the evidence in order to maintain the integrity of the record, protect the jury from unduly prejudicial and irrelevant information, vouchsafe the rights of all parties, and preserve the dignity of the tribunal.

Nevertheless, and contrary to plaintiff's supposition, plaintiff was afforded substantial leeway in the presentation of her case.  Despite the fact that almost none of the documentary evidence plaintiff presented at trial was more than tangentially relevant to the issues to be decided by the jury, the court admitted nearly all plaintiff's exhibits.  In addition, plaintiff was allowed to testify at length and without undue restriction about matters largely unrelated to the essential elements of her claims.  The court intervened only when plaintiff began to wander so far afield from any relevant issue or so far transgress the rules of evidence that some boundary was required to be maintained.

Plaintiff seems to have only the vaguest notion that her claims are comprised of

---

[7] Plaintiff further suggests that I prompted defendants to make mid-trial motions.  The record plainly reflects otherwise.  Moreover, even if defendants had not so moved, the court has the discretion to grant judgment as a matter of law *sua sponte* in an appropriate case.  **See Procter & Gamble Co. v. Amway Corp**., 242 F.3d 539, 559 (5th Cir. 2001); **Pahuta v. Massey–Ferguson, Inc**., 170 F.3d 125, 129 (2nd Cir. 1999); 9B Arthur R. Miller, **Federal Practice & Procedure Civil** § 2533 (3rd ed.) (text accompanying n.17).  Given the utter lack of factual support for plaintiff's claims, this matter clearly was such a case.

legal elements[8] that must be proven by the presentation of evidence[9] in order for her to recover, let alone what those essential elements are.  She offers nothing more than her own, bald *ipse dixit* to suggest that the testimony and evidence which were excluded or circumscribed would have proven the essential elements I found insufficiently established to warrant submission of her claims to the jury.[10]

Plaintiff appears to believe that the federal courtroom is a bully pulpit for a her to tell her story in whatever manner and by whatever "proof" she alone deems sufficient.  In this, she is mistaken.  It does not constitute "tampering with the evidence" for the court to demand that the parties follow the Federal Rules of Evidence.  In short, there is nothing in plaintiff's motion that warrants granting her a new trial.[11]

**THEREFORE IT IS ORDERED** that plaintiff's notice of **Fraud Upon the Court**

---

[8]  For example, plaintiff has consistently focused, myopically, on attempting to establish various RICO predicate acts, while completely ignoring the other elements of her RICO and COCCA claims, including that element found lacking at mid-trial – the existence of a RICO or COCCA enterprise.

[9]  It became apparent to the court during the trial that plaintiff conceives of her own beliefs, speculations, and conclusions as evidentiary facts.  They most assuredly are not.

[10]  Nor has plaintiff offered anything to substantiate her argument that the excluded evidence would have established claims against any previously dismissed defendant.

[11]  Plaintiff's apparent inability to reasonably and rationally perceive the legal merits of her various claims is not unique to this lawsuit.  Plaintiff previously attempted to litigate many of these same claims against Mr. Norman in Colorado state district court, in which case she also sued the judges involved in the dissolution of marriage case.  She now has filed a lawsuit implicating me and the magistrate judge, among others, in a variety of RICO predicate acts, based on our participation in the instant suit.  If it becomes a pattern for plaintiff to file a new action every time she fails to receive a favorable outcome in a pending action, this lawsuit could continue to morph and grow *ad infinitum*.  Plaintiff should be aware that the district courts have both statutory and inherent authority to regulate the litigation activities of litigants who have proved themselves to be abusive.  **See** 28 U.S.C. § 1651(a); **Andrews v. Heaton**, 483 F.3d 1070, 1077 (10th Cir. 2007); **Tripati v. Beaman**, 878 F.2d 351, 352 (10th Cir. 1989).  Although plaintiff has not yet clearly reached that point, there may come a time in the near future when it will become appropriate for this court or another to consider curtailing plaintiff's litigation activities by, for instance, prohibiting her from filing new lawsuits regarding these same facts without benefit of counsel.  **See, e.g.**, **Smith v. Anderson**, 2009 WL 4035902 at *4-5 (D. Colo. Nov. 19, 2009), **aff'd**, 389 Fed. Zppx 789 (10th Cir. July 27, 2010), **cert. denied**, 131 S.Ct. 1511 (2011).

**by Robert Blackburn, Gary Norman and Cliff Hudson** [#315], filed May 13, 2014, construed as a motion for new trial, is **DENIED**.

Dated May 16, 2014, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge